UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSCAR MERCADO,

                                 **Petitioner,**

          *- against -*

JOHN LEMPKE, Superintendent, Five Points
Correctional Facility,

                              **Respondent.**

07 Civ. 9865 (VB) (PED)

**REPORT AND
RECOMMENDATION**

---

TO:    **THE HONORABLE VINCENT L. BRICCETTI,
UNITED STATES DISTRICT JUDGE**

## I. INTRODUCTION

Oscar Mercado ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus*
pursuant to 28 U.S.C. § 2254. Petitioner was convicted on September 22, 2002 in Westchester
County Court (Zambelli, J.), after a trial by jury, of several offenses relating to a sexual attack on
a neighbor. He was sentenced to a total aggregate term of thirty years imprisonment. This
petition comes before me pursuant to an Order of Reference dated November 13, 2007 (Docket
No. 3) which was reassigned to me on January 12, 2009 (Docket No. 25). For the reasons set
forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND[1]

A.    **The Crime**

The facts related to the underlying criminal offenses may be briefly summarized. In the

---

[1] Unless otherwise indicated, the information within this section is taken from
Respondent's Affidavit in Opposition to Petition for Writ of *Habeas Corpus* ("Resp't Aff.")
(Docket No. 36), the Record on Appeal ("R. on Appeal") (Docket No. 18), and a review of the
transcripts (Docket Nos. 14-23).

early morning of November 22, 2001, R.M.[2] was sexually attacked on two occasions in the

basement laundry room of her co-op building located in White Plains, New York. At about 2:25

a.m., R.M. woke up, went downstairs to the laundry room, and started two loads.[3] As R.M.

waited for the machines to finish, a man entered the laundry room, grabbed R.M., pinned her

down, scratched the outside and inside of her vagina with his fingers, and attempted to penetrate

her anally with his penis. R.M. scratched at the attacker. The attack ceased and the man

momentarily left the laundry room. He then returned, asked R.M. where his condom was, and

attacked R.M. a second time. When the attack stopped, the man asked R.M. if she would tell

anyone what happened and then left the room. R.M. then went to a friend's apartment where she

telephoned police.

**B.**     **The Arrest, Interview with Police, and Search Warrant**

When police arrived, they barricaded the laundry room so that the area would remain

undisturbed until a forensics team could arrive and process it. Officers testified that Petitioner

tried to enter the room, became agitated when he was prevented from doing so, threatened to

fight the police, and ignored warnings to return to his apartment or face charges of disorderly

conduct. Police attempted to place Petitioner under arrest in the basement hallway and Petitioner

struggled. Four officers eventually pulled Petitioner to the floor and placed handcuffs on him.

He was initially arrested on charges of disorderly conduct, resisting arrest, and obstruction of

governmental administration.

Petitioner was taken to the police station after the arrest. He was advised of and waived

---

[2] The victim's full name is withheld pursuant to N.Y. Civ. Rights Law § 50-b.

[3] R.M. testified she was an insomniac and often did her laundry at this time.

his Miranda[4] rights.  He told police that he wanted to enter the laundry room in order to wash his white shirt, which he stated was stained with blood because he worked as a butcher, and also contained the smell of another woman's perfume from his night out.  He also stated he had not seen anyone in the laundry room that night.  During the interview, police noticed wounds on Petitioner and photographed them.  Police later obtained a search warrant and recovered clothing from Petitioner's apartment which R.M. testified at trial her attacker was wearing.

Petitioner was later indicted on the following charges: one count of sodomy in the first degree, two counts of sexual abuse in the first degree, two counts of aggravated sexual abuse in the second degree, one count of assault in the second degree, one count of unlawful imprisonment in the second degree, two counts of disorderly conduct, one count of obstructing governmental administration in the second degree, and one count of resisting arrest.

## C.   Pretrial Motion

Through pretrial omnibus motion, Petitioner's defense attorney moved to, among other things, suppress physical evidence and statements made to police.  On June 21, 24, 25, 26, and July 8 and 9, 2002, a combined Mapp,[5] Huntley[6]/ Miranda, and Wade[7] hearing was conducted.  (See July 24, 2002 Decision/Order, at 1 (Docket No. 43)).

### 1.   Mapp *Hearing*

Petitioner argued that police unlawfully searched his apartment and seized his white shirt

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

[5] Mapp v. Ohio, 367 U.S. 643 (1961).

[6] People v. Huntley, 15 N.Y.2d 72 (1965).

[7] United States v. Wade, 388 U.S. 218 (1967).

on the night of R.M.'s attack.  That white shirt was tested and found to contain blood belonging

to Petitioner and another, unidentified human.  At the suppression hearing, law enforcement

testified that after they arrived at the building, R.M. took them to the basement laundry room.

While downstairs, R.M. saw Petitioner walking toward the laundry room and carrying a white

shirt and laundry detergent.  R.M. identified Petitioner to the police as her attacker.  Police

watched Petitioner walk down the hallway but did not notice which apartment he eventually

entered.  Later, an officer knocked on one of the basement apartment doors.  A woman answered

the door and invited the officer inside.  Petitioner then appeared from elsewhere in the

apartment.  In response to certain questions, the woman – who was Petitioner's girlfriend and

who also resided in the apartment – reached into a closet, pulled out the white shirt, and handed

it to the officer.  The officer also noticed that Petitioner had a fresh cut behind his right ear.

Petitioner's girlfriend testified at the hearing that she never invited the officer inside the

apartment, that the officer burst through the front door, and that the officer grabbed the white

shirt out of her hands.  The hearing court credited the officer's version of events.

### 2.   Huntley / Miranda *Hearing*

Petitioner argued that statements he made to police after his arrest should be suppressed

as a product of an invalid Miranda waiver.  Specifically, Petitioner argued that because he was

initially arrested only for conduct related to his attempt to enter the laundry room, he could not

waive his Miranda rights and discuss events pertaining to a different crime.  He also argued that

his Miranda waiver was invalid because he only signed one side of the waiver card.  After the

hearing, the court determined that Petitioner knowingly and voluntarily waived his Miranda

rights both by oral statement and by signing one side of the card; that any statements he provided

thereafter were voluntarily made; and that police were not required to inform him of the specific

4

crime they were investigating.

## D.    The Evidence at Trial

R.M. testified at trial, described the events of that evening, and identified Petitioner as

the attacker.  Medical staff from the hospital which R.M. visited that night testified to her

injuries.  Forensic examiners testified that blood found on the bathrobe worn by R.M. that night

contained Petitioner's DNA.  They also testified that Petitioner's white shirt contained blood

containing his and another human's DNA.  Law enforcement testified that a condom was

recovered from the laundry room.  Photographs of wounds found on Petitioner that evening were

introduced.  Neighbors also testified that they returned home that evening shortly before R.M.

testified the attack occurred and saw Petitioner in the hallway near the laundry room.

Petitioner testified in his own defense.  He admitted he wore the clothing introduced at

trial and that he entered the laundry room that night.  He stated he did not see R.M. but did see

another man in the laundry room who looked like Petitioner.  Defense counsel also cross-

examined the state's forensic witnesses and suggested that Petitioner's blood was found on the

bathrobe due to cross-contamination.

## E.    Verdict and Sentencing

On September 20, 2002, the jury returned a verdict finding Petitioner guilty of one count

of sodomy in the first degree, in violation of N.Y. Penal Law § 130.50(1);[8] two counts of sexual

abuse in the first degree, in violation of N.Y. Penal Law § 130.65(1);[9] two counts of aggravated

---

[8] "A person is guilty of sodomy in the first degree when he or she engages in deviate sexual intercourse with another person . . . [b]y forcible compulsion." N.Y. Penal Law § 130.50(1), amended by 2003 N.Y. Sess. Laws ch. 264, § 20 (2006).

[9] "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion." N.Y. Penal Law § 130.65(1).

sexual abuse in the second degree, in violation of N.Y. Penal Law § 130.67(1);[10] and one count

of obstruction of governmental administration in the second degree, in violation of N.Y. Penal

Law § 195.05.[11]  Defense counsel orally moved to set aside the jury's verdict on the ground that

it was "contrary to the evidence" presented at trial.  (Sept. 20, 2002 Trial Tr., at 1608-09 (Docket

No. 23)).  The court denied the motion.  (Id.)

On October 29, 2002, the court sentenced Petitioner to concurrent, determinate terms of

imprisonment of twenty-five years on the sodomy count, seven years on the first sexual abuse

count, fifteen years on the first aggravated sexual abuse count, five years on the second

aggravated sexual abuse count, and one year on the obstruction count.  The court also sentenced

Petitioner to a term of five years on the second sexual abuse count to run consecutively.

Accordingly, the court imposed a total aggregate sentence of thirty years imprisonment.

On January 22, 2003, the court amended the sentence to correct an error in the original

Order of Commitment, which interposed the sentences for the second sexual abuse count and the

first aggravated sexual abuse count.  (See July 24, 2008 Re-Sentencing Tr., at 9-10 (Docket No.

26); Sentence and Commitment Sheet (attached to R. on Appeal, at p. x-xi)).

---

[10] "A person is guilty of aggravated sexual abuse in the second degree when he inserts a finger in the vagina, urethra, penis, or rectum of another person causing physical injury to such person . . . [b]y forcible compulsion."  N.Y. Penal Law § 130.67(1), amended by 2009 N.Y. Sess Laws ch. 485, § 5 (2009).

[11]

A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . .

N.Y. Penal Law § 195.05.

**F.**    **Direct Appeal**

Petitioner, through appellate counsel, appealed his conviction to the New York State

Appellate Division, Second Department, on the following grounds:

(1)    the guilty verdict on the sodomy charge was against the weight of evidence
and the evidence adduced at trial was legally insufficient to support this
conviction (see Br. of Def.-Appellant, at 53-57 (Docket No. 43));

(2)    the following evidentiary errors by the trial court individually and/or
cumulatively deprived Petitioner of a fair trial:

(a)    the trial court improperly precluded defense counsel from
questioning a witness about the significance of vaginal and anal
swabs collected from the victim, (see id. at 58);

(b)    the trial court improperly precluded defense counsel from
questioning a witness about certain DNA testing techniques, (see id.);

(c)    the trial court improperly precluded defense counsel from introducing
into evidence notes that another tenant of the building had written
regarding an exterior door, (see id. at 58-59);

(d)    the trial court improperly permitted a witness to testify about the
opinions of non-testifying lab technicians, (see id. at 58); and

(e)    the trial court improperly denied defense counsel's application to
allow the jury to visit the crime scene, (see id. at 59); and

(3)    the sentence was excessive.

On April 19, 2004, the Second Department affirmed the judgment, as amended by the January

22, 2003 proceeding. People v. Mercado, 774 N.Y.S.2d 801 (App. Div. 2004). Petitioner sought

leave to appeal to the New York Court of Appeals and leave was denied on June 24, 2004.

People v. Mercado, 3 N.Y.3d 644 (2004). Petitioner did not seek a writ of *certiorari* to the

United States Supreme Court. (See Pet. Under 28 USC § 2254 For Writ of Habeas Corpus By a

Person in State Custody ("Pet."), at 3 (Docket No. 2) (typeface altered from original)).

**G.**    **State Collateral Proceedings**

**1.**    ***§ 440.10 Motion to Vacate Judgment of Conviction***

On or about February 23, 2007, Petitioner, proceeding *pro se*, moved the trial court to

vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10[12] on the following grounds:

    (1)      evidence was illegally seized; and
    (2)      the prosecution wrongfully withheld Brady[13] material.

(See Not. of Mot. (Docket 43)). The trial court denied the motion on May 9, 2007. (May 9,

2007 Decision & Order (Docket No. 43)). The Second Department denied leave to appeal on

August 20, 2007. (Docket No. 43).

    2.     **_§ 440.20 Motion to Vacate Sentence_**

      On or about March 25, 2008, Petitioner, proceeding *pro se*, moved the trial court to

vacate the sentence as imposed on January 22, 2003 pursuant to N.Y. Crim. Proc. Law §

440.20[14] on the following ground:

    (1)     Petitioner was not produced in court for this proceeding.

(See July 24, 2008 Re-Sentencing Tr., at 5). On July 24, 2008, Petitioner appeared with counsel

for another re-sentencing. The court denied the § 440.20 motion on the record. (Id.)

**H.**    **Re-Sentencing**

      On July 24, 2008, the trial court re-sentenced Petitioner in order to judicially add terms of

post-release supervision to his sentence. (See July 24, 2008 Re-Sentencing Tr.). The court also

stated that "all other terms and conditions of the sentence remain in full force and effect, and all

other sentences on the other counts remain in full force and effect." (Id. at 11).

--------------------

[12] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ." N.Y. Crim. Proc. Law § 440.10(1).

[13] Brady v. Maryland, 373 U.S. 83 (1963).

[14] "At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law." N.Y. Crim. Proc. Law § 440.20(1).

Through counsel, Petitioner appealed the July 24, 2008 re-sentence on the following

ground:

>   (1)   the commitment sheet for the re-sentence incorrectly reflected an aggregate
>         total term of forty years imprisonment.

(Br. for Def.-Appellant (attached to Docket No. 35, at subdivision G)).  Petitioner then requested

and was granted leave by the Second Department to file a supplemental *pro se* brief, (see Docket

No. 35, at subdivisions I-J), in which he raised the following additional claims:

>   (2)   the re-sentence was excessive;
>   (3)   the re-sentence should be reduced in the interests of justice;
>   (4)   the re-sentence violated double jeopardy;
>   (5)   Petitioner was denied his right to be present at the January 2003 proceeding;
>         and
>   (6)   the re-sentencing violated the *ex post facto* clause.

(See Docket No. 35, at subdivision K).  On June 8, 2010, by written decision and order, the

Second Department held that the trial court properly re-sentenced Petitioner in order to judicially

add the term of post-release supervision.  However, the court also held that the Superseding

Sentence and Commitment Sheet incorrectly listed the term of imprisonment for the first

conviction for first degree aggravated sexual abuse as a consecutive term.  People v. Mercado,

904 N.Y.S.2d 451, 452 (App. Div. 2010); (see Superseding Uniform Sentence & Commitment

Sheet (Docket No. 27)).  As the original October 29, 2002 sentencing transcripts reflected, the

only consecutive sentence that was imposed was on the five-year term of imprisonment for first

degree sexual abuse.  The Second Department remitted the case to the trial court for issuance of

a corrected Commitment Sheet, and denied Petitioner's remaining claims.  Mercado, 904

N.Y.S.2d at 452.  The New York Court of Appeals denied Petitioner leave to appeal on

September 10, 2010.  People v. Mercado, 15 N.Y.3d 854 (2010).  Petition for a writ of *certiorari*

was denied by the United States Supreme Court on February 22, 2011.  Mercado v. New York,

9

131 S.Ct. 1485 (2011).

## I.   *Habeas Corpus* **Proceedings**

### 1.   *Respondent's Motion to Dismiss*

By petition dated October 17, 2007, Petitioner sought a writ of *habeas corpus*. On October 2, 2008, Respondent moved to dismiss the petition as time-barred pursuant to 28 U.S.C. § 2244(d). (Docket No. 13). By Order dated August 13, 2009, Judge Karas denied Respondent's motion. (Docket No. 31). In doing so, Judge Karas construed Petitioner's Affirmation in Opposition to Respondent's Motion to Dismiss (Docket No. 24) as a motion to amend the petition in order to incorporate facts relevant to the July 24, 2008 re-sentence, thereby overcoming the timeliness issue.

### 2.   *Petitioner's Motion to Amend*

On December 2, 2010, Petitioner moved to amend his original petition to include claims raised on the appeal of his July 24, 2008 re-sentence. (Docket No. 44). On February 4, 2011, I denied this motion. (Docket No. 47).

### 3.   *Claims Raised in the Instant Petition*

A liberal reading of Petitioner's filings in support of his petition for *habeas corpus*, see Haines v. Kemer, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests"), reveals that he has raised the following claims:

> (1)   the verdict of guilty was against the weight of the evidence, (see Pet., at 4; Mem. of Law Pet'r, Pro-Se (hereinafter "Pet'r Reply Mem."), at 57-72 (Docket No. 42));

(2)     the evidence adduced at trial was legally insufficient to convict Petitioner, (see Pet'r Reply Mem., at 58-59, 62-63, 64–72);

(3)     the following evidentiary errors by the trial court deprived Petitioner of a fair trial, (see Pet., at 4):[15]

     (a)     the trial court improperly precluded defense counsel from questioning a witness about the significance of vaginal and anal swabs collected from the victim, (see Pet'r Reply Mem., at 54-55);

     (b)     the trial court improperly precluded defense counsel from questioning a witnesses about certain DNA testing techniques, (see id. at 52-53);

     (c)     the trial court improperly precluded defense counsel from introducing into evidence notes that another tenant of the building had written regarding an exterior door, (see id. at 50-51);

     (d)     the trial court improperly permitted a witness to testify about the opinions of non-testifying lab technicians, (see id. at 54);

     (e)     the trial court improperly denied defense counsel's application to allow the jury to visit the crime scene, (see id. at 51-52); and

     (f)     the trial court improperly prevented defense counsel from questioning a witness about cross-contamination of DNA evidence, (see id. at 55-56);

(4)     evidence presented at trial was seized in violation of the Fourth and Fourteenth Amendments, (see Pet., at 4; Pet'r Reply Mem., at 1-26);

(5)     the prosecution withheld Brady material, (see Pet., at 4; Pet'r Reply Mem., at 27-47);

(6)     Petitioner's right to a fair trial was violated when the trial court failed to excuse a biased juror, (see Pet'r Reply Mem., at 48);

(7)     Petitioner's right to a fair trial was violated when the trial court failed to ask the jury if they read a newspaper article about the case, (see id. at 48-49);

(8)     Petitioner's right to a fair trial was violated when the trial court failed to issue a gag order to the press, (see id. at 49); and

(9)     Petitioner's Miranda rights were violated, (see Pet., at 5; Pet'r Reply Mem., at 73-81).

## III. DISCUSSION

## A.    Applicable Law

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

---

[15] The petition simply states that "[t]he trial courts actions were such as to deny the defendant a fair trial." (Pet., at 4).  Petitioner specifies those actions in his reply memorandum. (See Pet'r Reply Mem., at 48-56).

11

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d). The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

1.    *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting

points for the limitations period, and specifies that the latest of these shall apply. See id. §

2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct
>> review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or laws of the United States is
>> removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly recognized by
>> the Supreme Court and made retroactively applicable to cases on collateral
>> review; or

12

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

2.    *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

13

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented"). The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

　　　　To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

14

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner

who fails to meet a state's requirements to exhaust a claim will be barred from asserting that

claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain

unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise

its discretion to review and deny a mixed petition containing both exhausted and unexhausted

claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277

(2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied

on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004)

(interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.   *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism

demand that a federal court abstain from its review when the last-reasoned state court opinion to

address the claim relied upon "an adequate and independent finding of a procedural default" to

deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst

v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126

(2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on

state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at

740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the

state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia,

498 U.S. 411, 423-24 (1991)).

### 4.     *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal

habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more

exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed

after AEDPA became effective, federal courts must apply the following standard to cases in

which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.  Analysis of Petitioner's Claims**

    **1.  *Claims Raised on Direct Appeal***

        **a.  Weight of the Evidence (Claim 1)**[16]

Petitioner asserts the jury's verdict was against the weight of the evidence.  Respondent contends this claim is not cognizable upon federal *habeas* review.  (See Resp't Mem. of Law (hereinafter "Resp't Mem."), at 24 (Docket No. 37)).

---

[16] For organizational purposes, I identify the claims as I have numbered them in Section II(I)(3) above.

17

It is well-established that a weight of the evidence claim is exclusively a matter of state law and does not present a federal question. See, e.g., McKinnon v. Superintendent, Great Meadows Corr. Facility, 2011 WL 2005112, at *4 (2d Cir. May 24, 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus");[17] Garrett v. Perlman, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15[18] and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle, 502 U.S. at 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Accordingly, Claim 1 must be denied.

### b.     Legally Insufficient Evidence (Claim 2)

On direct appeal, Petitioner argued that the evidence adduced at trial was insufficient to support the sodomy conviction.[19] (See Br. of Def.-Appellant, at 53-57). Respondent contends,

---

[17] Copies of unreported cases cited herein will be mailed to Petitioner. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[18] "Upon an appeal to an intermediate appellate court from a judgment . . . , such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant." N.Y. Crim. Proc. Law § 470.15(1). "A reversal or a modification of a judgment . . . , must be based upon a determination made . . . [u]on the law; . . . [u]pon the facts; . . . [a]s a matter of discretion in the interest of justice; or . . . [u]pon any two or all three of the bases specified [above]." Id. § 470.15(3). "The kinds of determinations of reversal or modification deemed to be on the facts include, but are not limited to, a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." Id. § 470.15(5).

[19] To the extent that Petitioner's general argument in support of this claim upon *habeas* review asserts that the evidence adduced at trial was insufficient to support any of his

18

in part, that this claim is procedurally defaulted and remains unreviewable by this Court.  (See

Resp't Mem., at 27-30).

It is clear from the Second Department's written decision that it denied any legal

insufficiency of the evidence claim pursuant to New York's contemporaneous objection rule.[20]

While the Second Department went on to deny the claim on the merits, the court's primary

reliance on this state procedural law constitutes an independent and adequate ground for its

decision.  See Harris, 489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to

dismiss a claim, but which, in the alternative, also proceeds to dismiss the claim on the merits,

relies on the independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235

---

convictions, such an argument remains unexhausted because it was not previously raised in state
court.  However, this record-based claim may be "deemed" exhausted because Petitioner may no
longer raise it in a state collateral proceeding.  N.Y. Crim. Proc. Law § 440.10(2)(c) (claims
adequately based in the record but not argued on direct appeal must be denied when raised in
post-conviction motion).  This Court may circumvent Petitioner's procedural default and review
the claim only upon a showing of cause and prejudice or a fundamental miscarriage of justice.
Because Petitioner does not assert either, such a claim would have to be denied.

[20] The decision states, in pertinent part: "The defendant's contention that the evidence
was legally insufficient . . . is unpreserved for appellate review (see CPL § 470.50(2)).  In any
event, . . . we find that it was legally sufficient to establish the defendant's guilt beyond a
reasonable doubt."  People v. Mercado, 774 N.Y.S.2d 801, 801 (App. Div. 2004) (internal
citation omitted).  The court's citation to N.Y. Crim. Proc. Law § 470.05(2) reveals that it relied
on New York's contemporaneous objection rule.

> For purposes of appeal, a question of law with respect to a ruling or
> instruction of a criminal court during a trial or proceeding is presented when a
> protest thereto was registered, by the party claiming error, at the time of such ruling
> or instruction or at any subsequent time when the court had an opportunity of
> effectively changing the same.

N.Y. Crim. Proc. Law § 470.5(2).  Under this section, "an objection to a ruling or instruction of a
criminal court must be raised contemporaneously with the challenged ruling or instruction in
order to preserve the objection for appellate review."  Green v. Travis, 414 F.3d 288, 294 (2d
Cir. 2005).  In addition, the objection "must also be made with sufficient specificity to enable the
trial court to respond."  Id.

F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for appellate review" and then rules "in any event" that the claim also fails on its merits, the claim rests on the adequate and independent state law rule which precludes federal *habeas* review); see also Wainwright v. Sykes, 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes adequate procedural ground for dismissal); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (same).

Petitioner appears to dispute that the Second Department's reliance on the contemporaneous objection rule was adequate. (See Pet'r Reply Mem., at 57-72). Specifically, he argues that the court's failure to review the merits of Claim 2 was improper because his trial counsel did properly preserve the argument for appellate review. (See id. at 59 (citing to page 1306 of the trial transcript)).

It is clear from the record that defense counsel only made a specific objection to the sufficiency of the evidence for the obstruction of governmental administration charge. (See Sept. 19, 2002 Trial Tr., at 1306 (Docket No. 22) (moving for a trial order of dismissal on ground that the evidence was legally insufficient to prove the charge of obstructing governmental administration and reserving right to make similar motion with respect to the other charges at a later time)). After the jury returned its verdict, counsel moved to set the verdict aside "on the grounds that it's contrary to the evidence, which was entered in this case." (Sept. 20, 2002 Trial Tr., at 1608-09). It is well-established that under New York law, this general objection was insufficient to preserve a claim of legally insufficient evidence for the specific sodomy conviction. There is "no doubt that New York case law requires that a sufficiency objection be specifically made to the trial court in the form of a motion to dismiss at trial." Donaldson v. Ercole, 2009 WL 82716, at *2 (2d Cir. Jan. 14, 2009). However, "New York

20

courts have consistently held that a *general* motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged." Sweney v. Department of Corr., 2011 WL 1376766, at *3 (W.D.N.Y. Apr. 11, 2011) (citing People v. Gray, 86 N.Y.2d 10, 20-22 (1995)) (emphasis added); see also, e.g., Donaldson, 2009 WL 82716, at *2 (quoting People v. Hines, 762 N.Y.2d 56 (2001)) ("'Indeed, even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be specifically directed at the alleged error.'"); Sanchez v. Lee, 2011 WL 924859, at *18 & n.30 (S.D.N.Y. Mar. 16, 2011) (collecting cases)).  The Second Department's reliance on the contemporaneous objection requirement therefore constitutes an adequate procedural bar which precludes this Court from further review.  Petitioner has not alleged cause and prejudice or a resulting fundamental miscarriage of justice to circumvent this procedural default. Accordingly, Claim 2 must be denied.

### c.   Fair Trial Claims Involving Evidentiary Rulings (Claim 3)

On direct appeal, Petitioner argued that certain evidentiary rulings by the trial court deprived him "a fair trial."  (Br. of Def.-Appellant, at 58 (typeface altered from original); see supra Section II(F)).  In support of his *habeas* petition, Petitioner specifically identifies the following six evidentiary errors:

(a)     the trial court improperly precluded defense counsel from cross-examining a witness about the significance of the vaginal and anal swabs that were collected from the victim, (see Pet'r Reply Mem., at 54-55);

(b)     the trial court improperly precluded defense counsel from cross-examining a witnesses about certain DNA testing techniques, (see id. at 52-53);

(c)     the trial court improperly precluded defense counsel from introducing into evidence notes that another tenant of R.M.'s building had written regarding an exterior door into the building, (see id. at 50-51);

(d)     the trial court improperly permitted a witness to testify about the opinions of non-testifying lab technicians, (see id. at 54);

(e)     the trial court improperly denied defense counsel's application to allow the

jury to visit the crime scene, (see id. at 51-52); and

(f)     the trial court improperly prevented defense counsel from cross-examining
a witness about the potential for cross-contamination of DNA evidence, (see
id. at 55-56);

Petitioner contends these errors deprived him "a fair trial under the Fourteenth Amendment," (id.

at 48 (typeface altered from original)), as well as the Sixth Amendment's right to present a

complete defense, (see id. at 51 (citing United States v. Szur, 289 F.3d, 200, 217 (2d Cir. 2002)

(discussing fundamental right to present a complete defense)); see also id. at 52-56 (citing

Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009) and Crawford v. Washington, 541 U.S.

36 (2004), and discussing the Sixth Amendment)).

### i.     *Claim 3(f)*[21]

Petitioner argues that the trial court improperly prevented defense counsel from cross-

examining a witness about the potential for cross-contamination. However, this argument was

not raised in any state court proceeding. While Petitioner did raise on direct appeal a number of

fair trial claims regarding the trial court's evidentiary rulings, that section of the brief did not

include this argument. (Compare Br. of Def.-Appellant, at 58-60, with Pet'r Reply Mem., at 55-

56). This record-based claim is therefore unexhausted, yet may be "deemed" exhausted because

Petitioner will now be unable to raise it in state court through collateral motion. N.Y. Crim Proc.

§ 440.10(2)(c) (claims adequately based in the record but not argued on direct appeal must be

denied when raised in post-conviction motion). Petitioner does not allege cause and prejudice or

---

[21] Respondent has not specifically addressed this aspect of Claim 3, as it was specifically
identified for the first time in Petitioner's reply memorandum in support of his *habeas* petition.
It is well-settled within this Circuit that a party may not raise an argument for the first time in a
reply brief, including claims raised in support of a § 2254 petition. See, e.g., Mathieu v.
Giambruno, 2008 WL 383509, at *2 n.2 (S.D.N.Y. Feb. 11, 2008). This Court is not required to
consider such claims. However, I address the argument because it is clearly procedurally
defaulted and therefore unreviewable.

a fundamental miscarriage of justice that would allow this Court to circumvent his procedural default and review the claim. Accordingly, Claim 3(f) must be denied.

### ii.   *Claims 3(a-e)*

It is clear from the appellate briefs submitted on direct appeal that the federal constitutional nature of Claims 3(a), (b), (c), (d), and (e) was not fairly presented to the state courts.[22]   First, Petitioner's argument on direct appeal was devoid of reference to "federal cases employing constitutional analysis." Daye, 696 F.2d at 194.  Indeed, no federal cases were cited in this section of the appellate brief.  (See Br. of Def.-Appellant, at 58-60).  Second, Petitioner did not rely "on state cases employing constitutional analysis." Id.  The state cases he referenced within this section of the brief do not analyze evidentiary rulings in terms of federal constitutional rights.  Rather, they are cited solely for the proposition that, under state law, cumulative trial errors may warrant reversal.  (See Br. for Def.-Appellant, at 59-60 (citing or otherwise referencing People v. Lane, 10 N.Y.2d 347 (1961); People v. Carborano, 301 N.Y. 39 1950); People v. Smith, 172 N.Y. 210 (1902); People v. Coates, 528 N.Y.S.2d 545 (App. Div. 1988); People v. Rosa, 489 N.Y.S.2d 722 (App. Div. 1985); People v. Pierce, 218 N.Y.S. 249 (App. Div. 1926); People v. McGraw, 72 N.Y.S. 679 (App. Div. 1901))); cf. Marshall v. McLaughlin, 2007 WL 2438380, at *5 (S.D.N.Y. Aug. 27, 2007) (argument referencing New York cases that employed constitutional analysis fairly presented federal claim).

Third, Petitioner's brief did not assert his claim "in terms so particular as to call to mind" the specific federal constitutional rights he now appears to assert. Daye, 696 F.3d at 194.  The

---

[22] Although Respondent does not specifically argue that the federal legal nature of these arguments was not fairly presented to the state's highest court, it is appropriate for this Court to address this matter *sua sponte*. See, e.g., Lurie v. Wittner, 228 F.3d 113, 123-24 (2d Cir. 2000).

argument within the appellate brief was very short, applied no legal analysis, and contained no reference to the U.S. Constitution, "due process," "cross-examination," "confrontation," or the general right to "present a defense." Specifically, the arguments stated: (a) defense counsel was prevented from "inquiring as to the significance" of the swab testing, (Br. of Def.-Appellant, at 58); (b) "the trial court would not permit questioning as to whether" a DNA testing technique could be used for a particular purpose, which was "significant" because Petitioner may have been exonerated through the alternative test, (id.); (c) "[t]he trial court would not permit into evidence" the notes, which the defense sought to introduce "not to prove the truth of the matter asserted but to the fact that residents, including [R.M.], knew or should have known about the security problems in the building," (id. at 59); (d) "[i]t became apparent that [a forensic examiner]'s testimony was based upon the opinion of others in her laboratory who were not under oath," (id. at 58); and (e) pursuant to N.Y. Crim. Proc. Law § 270.50, the trial court should have permitted the jury to visit the crime scene, (id. at 59). The remainder of the section argued that these errors cumulatively amounted to reversible error pursuant to New York caselaw. (Id. at 59-60). This language does not contain any terms "so particular as to call to mind" Fourteenth Amendment due process, or the Sixth Amendment rights to cross-examination, confrontation, or presenting a complete defense. Additionally, the brief's mere reference to the term, "fair trial" within the point heading of this section, (id. at 58 (typeface altered from original)), is insufficient to fairly present a federal fair trial claim, see, e.g., Duncan v. Henry, 513 U.S. 364, 366 (1995) ("[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court"); Anderson v. Harless, 459 U.S. 4, 7 (1982) (per curiam) (a general or vague reference to a federal right, where the argument has cited only state law cases

24

that do not contain federal constitutional analysis, does not fairly present that federal claim);

Grady v. LeFevre, 846 F.2d 862, 865 (2d Cir. 1988) (appellant brief whose citations were only to

New York caselaw and whose analysis "discuss[ed] the issue solely in terms of New York law"

did not fairly present a federal constitutional claim to state courts); Petrucelli, 735 F.2d at 688

("[A] mere statement that 'due process' rights have been violated does not necessarily give rise

to a specific federal constitutional claim. 'Due process,' like 'fair trial,' can be a catchphrase

used by habeas petitioners as part of an allegation about any type of trial court error, including

errors in rulings based on state law."); Daye, 696 F.2d at 193 ("The more specific the description

of the right in question – *e.g.*, assistance of counsel, double jeopardy, self-incrimination – the

more easily alerted a court will be to consider a constitutional constraint couched in similarly

specific terms. . . . The greatest difficulty arises when in the state court the petitioner has

described his claim in very broad terms, such as denial of a 'fair trial.' . . . Obviously not every

event in a criminal proceeding that might be described as 'unfair' would be a violation of the

defendant's rights under the Constitution."); id. at 193 n.6 ("a defendant's reference in

constitutional terms to the deprivation of one particular right does not serve to alert a court to a

contention that another constitutional violation also occurred"); Scullark v. Greiner, 2005 WL

3454730, at *2 (S.D.N.Y. Dec. 15, 2005) ("mere references to 'due process' and 'fair trial' are

insufficient if the argument rests on issues of state law"); Spencer v. McCray, 2004 WL

1110244, at *7 (S.D.N.Y. Apr. 30, 2004) (claim not fairly presented where petitioner, "[i]n his

direct appeal, . . . alleged that the Justice's instructions violated his 'due process right to a fair

trial,' but relied exclusively on state law cases which made no reference to the United States

Constitution"); c.f., e.g., Powell v. Greiner, 2003 WL 359466, at *2 (S.D.N.Y. Feb. 18, 2003)

(internal quotation marks omitted) (fair trial claim based on trial court's evidentiary ruling was

fairly presented where petitioner stated his "due process right to a fair trial" was violated and cited the Fourteenth Amendment); Davis v. Hodges, 2002 WL 1033711, at *6 (S.D.N.Y. Jan. 9, 2002) (emphasis added) (asserting the phrase "right to *confront* witnesses" is "sufficient to have called to mind [the] specific right protected by the Constitution"); Perez v. McGinnis, 1999 WL 1021818, at *5 (E.D.N.Y. Jan. 4, 1999) (emphasis added) ("a claim of improper curtailment of *cross-examination* of an adverse witness directly calls to mind a defendant's Sixth Amendment right of confrontation" and therefore sufficiently presents a state court with that federal claim).

Finally, Petitioner's "pattern of facts" is not so "mainstream" as to have called to mind federal constitutional issues of due process, confrontation, cross-examination, or presenting a complete defense. Daye, 696 F.3d at 194. A claim based on a state court's evidentiary ruling, which itself is founded on state law, is "not 'commonly thought to involve constitutional constraints.'" Martinez v. Artuz, 2002 WL 1000287, at *4 (S.D.N.Y. May 13, 2002) (quoting Daye, 696 F.2d at 193). There is nothing in the appellate brief's argument that called to mind anything other than a trial court's routine determinations of evidentiary challenges involving relevance and hearsay. See, e.g., Daye, 696 F.2d at 193 ("Some [factual allegations] will be of patently constitutional dimension. If the defendant claimed that he was accused of one crime but convicted of an entirely different crime and hence was denied a fair trial, no reasonable jurist would doubt that the defendant's claim implicated his constitutional right to due process of law. In contrast, a defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers.").

The federal nature of Claims 3(a), (b), (c), (d), and (e) is therefore unexhausted. Nevertheless, these record-based arguments are deemed exhausted because they may not be

26

raised again in state court.  N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner does not allege

cause and prejudice for this procedural default, nor a resulting fundamental miscarriage of

justice.  Accordingly, Claims 3(a)-(e) must be denied.

### 2.    *Claims Raised in § 440.10 Motion*

#### a.    **Fourth Amendment Claim (Claim 4)**

Petitioner asserts the court erred in permitting into evidence the white shirt because it

was obtained after an unlawful search.  Respondent contends this claim is not cognizable upon

*habeas* review pursuant to the Stone v. Powell doctrine.  (See Resp't Mem., at 2-6).

In Powell, the Supreme Court held that "where the State has provided an opportunity for

full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a

state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an

unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465,

482 (1976); see also, e.g., Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is

established that a petitioner has had an opportunity to litigate his or her Fourth Amendment

claim . . . , the court's denial of the claim is a conclusive determination that the claim will never

present a valid basis for federal habeas relief. . . .  [T]he bar to federal habeas review of Fourth

Amendment claims is permanent and incurable absent a showing that the state failed to provide a

full and fair opportunity to litigate the claim[.]").  Accordingly, Fourth Amendment claims may

not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has

provided no corrective procedures at all to redress the alleged fourth amendment violations; or

(b) if the state has provided a corrective mechanism, but the defendant was precluded from using

that mechanism because of an unconscionable breakdown in the underlying process."  Capellan

v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

27

Petitioner asserts that New York's corrective procedure to redress Fourth Amendment violations is a "byzantine morass of arbitrary, unnecessary and unjustifiable impediments to the vindication of federal rights." (Pet'r Reply Mem., at 29). This argument is unfounded. The Second Circuit has expressly noted that "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* . . . , as being facially adequate." Id. at 70 n.1 (internal quotation marks and citation omitted).

Petitioner also asserts that the hearing court made "an egregious error, as [the judge] closed his ears and mind to factual testimony" when it denied his suppression motion. (Pet'r Reply Mem., at 12; see also id. at 17 (the court "made up its mind not to enforce the Fourth Amendment")). To the extent this argument may be liberally construed to argue that an unconscionable breakdown occurred, such an argument is also unfounded. "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." Smith v. Senkowski, 1999 WL 138903, at *6 (E.D.N.Y. Mar. 10, 1999) (citing Capellan, 975 F.2d at 71). Where a petitioner was provided "an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal review." Graham, 299 F.3d at 134. In this case, no breakdown in procedure occurred: Petitioner raised his Fourth Amendment claim through pretrial motion, a suppression hearing was held and, although he did not do so, Petitioner could have raised the claim on direct appeal. "[M]ere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process in violation of the petitioner's Fourth Amendment rights." Cook v. Donnelly, 2009 WL 909637, at

28

*5 (W.D.N.Y. Mar. 31, 2009) (citing <u>Capellan</u>, 975 F.2d at 71); <u>see also</u> <u>Capellan</u>, 975 F.2d at

70 (where state courts have corrective appellate or collateral procedure in place, judicial error

does not constitute an unconscionable breakdown).  Accordingly, Claim 4 must be denied.

### b.   *<u>Brady</u> Claim (Claim 5)*

Petitioner asserts his Fourteenth Amendment rights were violated when the prosecutor

failed to disclose certain evidence.  (<u>See</u> Pet., at 4; § 440.10 Mem. of Law (hereinafter "§ 440.10

Mem.") ¶ 23 (Docket No. 43)).  Specifically, Petitioner argues that a resident of another

basement apartment was awake at the time the assault occurred and informed a detective that he

did not hear a woman scream.  (§ 440.10 Mem. ¶ 24).  Petitioner also argues this "eyewitness"

supports Petitioner's argument that the white shirt was unlawfully seized.  (<u>Id.</u> ¶ 25).

Respondent contends the claim is procedurally barred and, in any event, the state court's denial

was not contrary to, nor an unreasonable application of, clearly established federal law.  (<u>See</u>

Resp't Mem., at 7-21).

It is clear from the trial court's written decision and order that it denied this claim

pursuant to § 440.30(4)(b).[23]  The opinion reads, in pertinent part:

> [T]he defendant's <u>Brady</u> claim lacks merit.  His papers do not contain sworn
> allegations substantiating or tending to substantiate that claim (see CPL 440.30(4)(b)
> . . . ).  Rather, his moving papers set forth only conclusory and unsubstantiated
> allegations that an unidentified witness had information favorable to the defendant
> and the People failed to disclose that information.

(May 9, 2007 Decision & Order, at 2 (internal citation omited)).  However, "[c]ourts in this

judicial district disagree concerning whether the denial of a motion pursuant to CPL § 440.30(4)

---

[23] "Upon considering the merits of the motion, the court may deny it without conducting
a hearing if . . . [t]he motion is based upon the existence or occurrence of facts and the moving
papers do not contain sworn allegations substantiating or tending to substantiate all the essential
facts . . . ."  N.Y. Crim. Proc. Law § 440.30(4)(b).

is an 'adequate and independent' state procedural bar, thus precluding habeas corpus relief, or a

decision on the merits." Edwards v. Mazzuca, 2007 WL 2994449, at *15 (S.D.N.Y. Oct. 15,

2007) (internal citations omitted); see also, e.g., Lopez v. Ercole, 2010 WL 1628994, at *18-19

(S.D.N.Y. Apr. 21, 2010) (collecting cases). Because the statute specifically states that the court

may only deny the motion after considering its merits, I agree with those courts who find that

this statute is not a procedural bar to *habeas* review. See, e.g., Lopez, 2010 WL 1628994, at

*18-19 (collecting cases); Edwards, 2007 WL 2994449, at *15 (same). Accordingly, I address

Claim 5 under AEDPA's deferential standard of review.

Brady charges prosecutors with a continuing duty to disclose exculpatory and

impeachment evidence where that evidence is material either to guilt or punishment. Brady, 373

U.S. at 87; see also United States v. Bagley, 473 U.S. 667, 676 (1985) (duty encompasses both

impeachment and exculpatory evidence). The evidence is material "if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different." Bagley, 473 U.S. at 682. However,

> The question is not whether the defendant would more likely than not have received
> a different verdict with the evidence, but whether in its absence he received a fair
> trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable
> probability" of a different result is accordingly shown when the government's
> evidentiary suppression "undermines confidence in the outcome of the trial."

Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678). The prosecutor's

duty to disclose also applies to information known only to police. "In order to comply with

Brady, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known

to the others acting on the government's behalf . . . including the police.'" Strickler v. Greene,

527 U.S. 263, 281 (1999) (quoting Kyles, 514 U.S. at 437). Thus, "[t]here are three components

of a true Brady violation: The evidence at issue must be favorable to the accused, either because

30

it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Id. at 281-82.

In this case, Petitioner has failed to establish that any alleged Brady material actually existed at the time of his prosecution or that it was withheld by the state. While Petitioner's § 440.10 memorandum states that the basement resident gave a detective a "statement," nowhere in his filings does Petitioner state *when* the statement was given. Further, although Petitioner provided an affidavit from himself in which he swears that this resident provided a statement to police, he did not provide an affidavit from the resident himself. Petitioner has no personal knowledge of what the resident witnessed or what information he gave to police. Petitioner admits that he never spoke to the resident and only learned of his existence after Petitioner's family told Petitioner they encountered him after Petitioner's sentencing. (See § 440.10 Mem. ¶ 38). Further, Petitioner has no personal knowledge of what this resident may have told the members of Petitioner's family who spoke with the resident. Petitioner admits he was in prison at the time and did not include affidavits from those family members in support of this claim. Without more, Petitioner's unsupported assertion that the police had any undisclosed information at the time of trial is insufficient to warrant *habeas* relief. See Beard v. Unger, 2009 WL 5042696, at *7 (W.D.N.Y. Dec. 15, 2009) (quoting United States v. Upton, 856 F. Supp. 727, 746 (E.D.N.Y. 1994)) (internal citation omitted) ("'[a]s a matter of law, mere speculation by a defendant that the government has not fulfilled its obligations under Brady . . . is not enough to establish that the government has, in fact, failed to honor its discovery obligations'"); id. ("Petitioner's bald assertion that the prosecution possessed additional information not disclosed in response to the defendant's omnibus demands, do[es] not, without more, establish the necessary elements of a Brady claim"); see also Martinez v. Phillips, 2009 WL 1108515, at

31

*26 (S.D.N.Y. Apr. 24, 2009) (quoting Harris v. United States, 9 F. Supp.2d 246, 275 (S.D.N.Y.

1998)) ("[I]t is petitioner's burden to prove that the government failed to disclose evidence

favorable to petitioner. Conclusory allegations that the government 'suppressed' or 'concealed'

evidence do not entitle petitioner to relief."); McKinney v. Burge, 2009 WL 666396, at *23

(N.D.N.Y. Mar. 10, 2009) (collecting cases). Accordingly, the state court's denial of Claim 5

did not unreasonably apply Brady.[24]

### 3.    *Unexhausted Claims*[25]

It is clear from a review of Petitioner's state court filings that Claims 6-9 were never

raised on either direct appeal or in a state collateral proceeding.

### a.    **Biased Juror (Claim 6)**

---

[24] By letter dated September 9, 2008, Petitioner sent to the Court various documents and other attachments – including a DVD – in support of his Brady claim. (Docket No. 50). Because these materials are not part of the record that was before the state court, this Court cannot consider them in determining whether the state court's resolution of the Brady claim was unreasonable under § 2254(d)(1). See Cullen v. Pinholster, 131 S.Ct.1388, 1398 (2011). In an abundance of caution, however, the Court has reviewed the DVD, which was apparently created by members of Petitioner's family and which includes a "reenactment" of the crime as well as an interview of the basement apartment resident.

The basement dweller's statements on the DVD do not support Petitioner's Brady claim. First, the witness states that the only information he provided police was that he did not hear a struggle coming from the laundry room that evening. However, he also states he arrived home after the attack occurred. Second, while the witness states he heard Petitioner and an officer arguing about how the officer obtained a shirt, he does not claim to have observed how the officer obtained the shirt. Thus, contrary to Petitioner's characterizations, this witness's observations are not exculpatory. Moreover, while the witness states that he heard scuffles associated with the officers' attempt to arrest Petitioner, he never states that he observed police "brutality." (§ 440.10 Mem. ¶ 25). To the contrary, he states he observed Petitioner, who appeared intoxicated, chasing police and threatening to fight.

[25] Respondent has not addressed Claims 6-8 because they were raised for the first time in Petitioner's reply brief in support of his *habeas* petition. Although this Court is not required to consider such claims, I note that each is clearly procedurally defaulted. (See supra n.21).

Petitioner asserts the trial court erred by not discharging a biased juror. (Pet'r Reply Mem., at 48). Specifically, he argues that a juror "revealed his bias and prejudice towards the petitioner" when he informed the court that he could not see Petitioner from his place inside the jury box. (Id.; see Sept. 6, 2002 Trial Tr., at 74-77 (Docket No. 18)). Petitioner asserts that "the court should have releaved [sic] him of his duty as a juror" at that point. (Pet'r Reply Mem., at 48). This record-based, unexhausted argument may be "deemed" exhausted. N.Y. Crim. Proc. Law § 440.10(2)(c); (see also Sept. 6, 2002 Trial Tr., at 74-77 (court addressing issue)). Petitioner does not allege cause and prejudice or a fundamental miscarriage of justice to circumvent this procedural default and enable this Court to review the claim. Accordingly, Claim 6 must be denied.

**b.      Newspaper Article (Claim 7)**

Petitioner asserts the trial court erred when it failed to poll the jury to determine if any members read a local newspaper article about the trial. (Pet'r Reply Mem., at 48-49; see Sept. 12, 2002 Trial Tr., at 717 (Docket No. 20); Sept. 13, 2002 Trial Tr., at 718-22 (Docket No. 20)). This record-based,[26] unexhausted claim may be "deemed" exhausted. N.Y. Crim. Proc. Law § 440.10(2)(c). Petitioner does not allege cause and prejudice or a fundamental miscarriage of justice. Accordingly, Claim 7 must be denied.

**c.      Gag Order (Claim 8)**

Petitioner's related claim asserts the trial court erred by failing to issue a gag order to the press. (Pet'r Reply Mem., at 48-49). This record-based, unexhausted claim is also "deemed" exhausted. N.Y. Crim. Proc. Law § 440.10(2)(c). Petitioner does not allege cause and prejudice

---

[26] The claim is adequately based in the record because the issue was discussed in court and the article marked as a court exhibit. (See Sept. 13, 2002 Trial Tr., at 718-721).

33

or a fundamental miscarriage of justice.  Accordingly, Claim 8 must be denied.

### d.  *Miranda* **Claim (Claim 9)**

Petitioner asserts the police interrogated him in violation of Miranda.  (Pet., at 5; see Pet'r Reply Mem., at 73-81).  Respondent contends, in part, that the claim remains unexhausted.  (See Resp't Mem., at 50-57).  Although this claim was a subject of the pretrial hearings, it was never raised on appeal.  It therefore remains unexhausted, yet is "deemed" exhausted as Petitioner can no longer raise this record-based claim on collateral review.  N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner does not allege cause and prejudice or a resulting fundamental miscarriage of justice.[27]  Accordingly, Claim 9 must be denied.

## IV. **CONCLUSION**

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

---

[27] Rather, Petitioner disputes Respondent's contention that the claim is unexhausted.  Specifically, Petitioner argues that the Second Department should have reviewed this claim as component of his weight of the evidence claim, which was raised on direct appeal and exhausted.  (See Pet'r Mem., at 80).  Petitioner's argument is without merit.  It is well-settled that, for exhaustion purposes, the state courts must be "fairly apprised" of both "the factual and legal bases underlying" a federal claim.  Grey, 933 F.2d at 119.  A review of the appellate brief's section discussing the weight of the evidence reveals nothing remotely related to Miranda.  (See Br. of Def.-Appellant, at 53-57).

or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation. Such objections, if any, shall be filed with the

Clerk of the Court with extra copies delivered to the chambers of The Honorable Vincent L.

Briccetti at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601,

and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: July 25, 2011
White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Vincent L. Briccetti
United States Courthouse
300 Quarropas Street
White Plains, New York  10601

Oscar Mercado, pro se
02-A-6109
Five Points Correctional Facility
State Route 96
Romulus, NY 14541

John James Sergi, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601

35